THE SAVANNAH, FLORIDA AND WESTERN RAILWAY COMPANY *vs.* PRITCHARD, MATTHEWS & COMPANY.

1. If a still-worm, to be used in the manufacture of turpentine, was shipped over a railroad and its connecting road, to be delivered at a point on the latter line, and it was delayed and not delivered by the second road until finally hunted up by the owners, the contracting road was liable for any injury resulting from the delay.

2. Where, by reason of such delay, crude turpentine overflowed the boxes made to catch it and was lost, the owners having no barrels in which to deposit it, the value of the material so lost could be recovered.

(*a.*) In such a case, the plaintiffs could recover the necessary expenses incurred in finding the still-worm, which had been carried from a depot of the railroad and delivered to another person, and in taking possession thereof. The result of such search mitigated the damages and formed a proper claim against the defendant; and it could not complain of acts which inured to its benefit.

(*b.*) The damages found in this case were not excessive.

(*c.*) It was the province of the court to interpret the written contract of affreightment, and his interpretation in this case was correct.

February 1, 1887.

Railroads. Damages. Negligence. Contracts. Practice in Superior Court. Before Judge HARDEN. City Court of Savannah. July Term, 1886.

To the report contained in the decision, it is necessary to add only that the testimony for the plaintiff showed, in brief, as follows: They bought a still-worm from McMillan Bros., of Savannah, and directed it to be shipped to Lumber City, with freight to be collected at destination, which was done. In order to transport freight from Savannah to Lumber City, it was carried from Savannah to Jesup by the Savannah, Florida and Western Railway, and thence to Lumber City by the East Tennessee, Virginia and Georgia Railway, a connecting line. The receipt given at Savannah by Walsh, the agent of the defendant, was as follows:

" SAVANNAH, March 10, 1883.

" Received from McMillan Bros., in good order, at S., F. & W. R. R.

| MARKS: | ARTICLES: |
|---|---|
| Pritchard, Matthews & Co., | One still-worm, |
| Lumber City, Ga. | 3 grate bars. |
| Walsh. | Charged." |

The worm was carried to Cochran, on the line of the East Tennessee, Virginia and Georgia Railway, and there, by mistake, delivered to Frazier & Company, and by them carried some miles into the country. One of the plaintiffs went in search of the worm, and more than a month after its loss found it, and it was forwarded to its proper destination. It had the names of plaintiffs marked on it. Plaintiffs claimed to recover the expenses incurred in the search, wages of employés during the delay caused by the error in delivery, and the value of 86 barrels of crude turpentine alleged to have been lost by reason of the want of the worm to complete the process of manufacture. On cross-examination, one of the plaintiffs testified that his idea was that the railroad which was negligent should pay the damages, and not the other. He stated, however,

that he knew nothing of the arrangements or contracts between the two companies, and that his idea was merely his own, and not based on anything which passed between him and the agents or officers of the defendant.  He testified also that the plaintiffs had boxed a stated number of trees, making 11½ crops; that they estimated to dip 30 barrels of crude turpentine from each crop; that all the barrels which they had for that use, as well as their kettle, were full; that if the crude turpentine was not dipped at the proper time, it would run over and be lost; and that about 86 barrels of turpentine were so lost by the delay, the exact amount of which he could not state.

CHISHOLM & ERWIN, for plaintiff in error.

GARRARD & MELDRIM, for defendants.

HALL, Justice.

The plaintiffs, who were engaged in gathering crude turpentine and manufacturing it into spirits and rosin, brought suit against the Savannah, Florida and Western Railway Company for failing to deliver to them the worm of a turpentine still which they had shipped by their road, from Savannah to Lumber City, on the East Tennessee, Virginia and Georgia Railroad.  It seems from the evidence that the worm was carried to Cochran, on the latter railroad, where it was delivered in the depot, and from there it was carried to the distillery of another party, some eight miles into the country.  After various efforts to trace the missing worm, and considerable expense incurred to find it, it was at length reclaimed by its owners from the party to whom it had been delivered, six weeks having elapsed between the time it should have been received at Lumber City and when it was actually received and put to use by the plaintiffs.  During all that time, their machinery and hands employed in running it were idle, and the tree boxes, from which the crude gum was gathered, had run over,

and much of it was wasted for the want of barrels in which to deposit it; and such loss would not have occurred had the worm come to hand at the proper time and the plaintiffs been enabled to use their still. The principal loss was in the crude turpentine, estimated at eighty-six barrels, the value of which was $4 a barrel. Plaintiffs had a verdict for $564.70, which was the amount of the entire damages proved, less $16. Defendant made a motion for new trial, which was overruled, and the defendant excepted.

(1) to (5.) The first five grounds of the motion alleged that the verdict was contrary to law, and evidence, decidedly and strongly against the weight of evidence, contrary to the charge of the court, and excessive.

(6.) The sixth ground alleges error in the following charge: "If it be shown to the satisfaction of the jury that the Savannah, Florida and Western Railway Company received goods consigned to some one point on their connecting road, and they receipted for it as delivered to them to be delivered at that point, the receipt is *prima facie* evidence of a contract on their part to deliver it, and is subject to rebuttal by proof only, and not by presumption." The error assigned is that the charge incorrectly states the terms of the receipt given for the still-worm, and erroneously instructs the jury that the receipt put in evidence was *prima facie* evidence of the contract on the part of the defendant to deliver the still-worm at the point of destination.

(7.) Because the court erred in charging further, in that connection, that "if plaintiffs, or any one or all of them, had an idea in their own minds that the liability was on each connecting road for such damage as might occur through the default of such road, that was an opinion of law which might or might not be correct, but would not affect the contract, unless known to the other party; that is to say, the opinion of Mr. Pritchard, one of the plaintiffs (if he had such an opinion), that the Savannah, Florida and

Western Railway Company would only be liable as far as Jesup, would not affect the legal liability of the railroad any more than he would be affected by the opinion of the railroad as to its idea of what its right was. Unless there be a *consensus* between them, the law would govern, and the contract would not be affected by the opinion;" the special error in the charge being that it took away from the consideration of the jury the construction put upon the contract by Pritchard, one of the plaintiffs.

(8.) Because of error in the following charge: " If it be shown that they received goods consigned to a point on a connecting railway, that would be *prima facie* evidence that they so undertook to deliver it, and to set that aside would require testimony which would satisfy the jury of another intention on their part known to the other party;" the error assigned to said charge being that, under the facts testified to in the case, the defendant did not undertake to deliver the goods at a point beyond its own line, and the receipt of the goods was not *prima facie* evidence of a contract to deliver beyond its own line.

(9.) Because the court charged: " When a person has been put by another in a position where he is about to suffer pecuniary loss, it is the duty of such person to make the pecuniary loss as light as he may reasonably be able to do. If Mr. Pritchard, or the firm, by the failure of the property being delivered, found he was going to suffer pecuniary loss, it was his duty to the corporation he expected to hold responsible to make the loss as light as possible, and any reasonable steps which he might have taken in this line and with a view of lessening the damage, either by lessening the time of delay, or facilitating the road to carry out its part of the contract, if there was a contract, would be a proper subject-matter for legitimate charge for damages;" the error assigned being the right of the plaintiff to hold the defendant for the expenses incurred by Pritchard in looking for the still-worm.

(10.) Because the verdict of the jury is contrary to that

part of the charge of the court which instructs them as to damage claimed for alleged loss of eighty-six barrels of crude gum, which charge was as follows: "My attention has been called to the fact that I have not charged with reference to the eighty-six barrels of crude gum. If there has been a loss which is directly but not altogether, attributable to this delay, and against which loss ordinary and reasonable prudence and care would not have prevented, then if damages are to be given at all, they should include such loss; but if damage did not directly come from the delay in getting this still, or if it be that the damage could have been avoided or lessened by reasonable care and diligence on the part of the plaintiff, then they cannot recover for that part of the claim. I mean this· that if they could, by reasonable care and diligence, have avoided the loss of the gum, they cannot recover; if they could have avoided the loss of a part or any of it, they cannot recover for such portion."

There are two questions, and only two, made by this record :

1. The first is as to the liability of the defendant for the delay in delivering the still-worm, which occurred on the connecting road, at the point to which it was consigned, and to which the defendant had contracted to carry and deliver it. Of its legal liability for this default, we think, under the decisions of this court, there can be no doubt. See *Central Railroad vs. Dwight Mfg. Co.*, 75 *Ga.* 609; *Falvey vs. Ga. R. R.*, 76 *Ga.* 597.

2. The material question in the case, however, is, whether the court gave the jury the correct rule as to the measure of damages, especially in the charge as to the item of loss of the crude turpentine. That loss, as we think, was the natural and legal result of the defendant's negligence. The claim on that account did not rest upon expected profits, but the loss of the material from the manufacture of which it was expected profits would be derived. These questions were fairly submitted to the jury, and there was

evidence, under the repeated ruling of this court and other courts, which justified their finding in this respect.    Hadley *et al. vs.* Baxendale *et al.*, 9 Excheq. 341; 1 Sutherland on Damages, 71, 77, 93, on the last of which pages it is said that the party injured is entitled to recover all his damages, including gains prevented, as well as losses sustained, and this rule is subject to but two conditions : that the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract; that is, must be such as might naturally be expected to follow its violation; and they must be certain both in their nature and in respect to the cause from which they proceed. *Ga. R. R. vs. Hayden,* 71 *Ga.* 518; code, §§2944, 3072, 3073, 3074, cited and commented on in that case ; *Willingham vs. Hooven, Owens, Rentschler & Co.,* 74 *Ga.* 233, *Stewart vs. Lanier House Co.,* 75 *Ga.* 582.*

There is very little doubt that the plaintiffs were entitled to recover the necessary expenses incurred in finding the still-worm and taking possession of the same. The result of that search mitigated the damages that would have formed a proper claim against the defendant. It should not complain of acts which inured to its benefit. We cannot conclude, from anything that appears in this record, that the finding in favor of the plaintiff is excessive, or in this respect contrary to the amount of actual damages proved to have been sustained by the plaintiffs. It was the province of the court to interpret and construe the contract of affreightment made between the plaintiffs and defendant, and we agree with the judge in his interpretation of this contract; in fact, we think the charges excepted to eminently correct and clearly and happily expressed.

Judgment affirmed.

*On deviation and delay, and the measure of damages therefor, see 71 Am Dec. 291; 62 *Il.* 409; 79 *Id.* 375.    (Rep).